## HEZEKIAH STITES *v.* WM. HOBBS.

### (No. 10,406.)

1. In Ohio, the covenant against incumbrance is a real covenant running with the land, and not broken until eviction.

2. Where promissory notes were given in part payment of real estate, conveyed by a deed containing the convenants of warranty and freedom from incumbrances, and at the time the land was mortgaged for more than its value, one to whom the notes were transferred before maturity for value, but with full notice of these facts, may recover against the maker of the notes, although, after the indorsement, an eviction occurred by sale of the land upon foreclosure under the prior incumbrance.

3. In such case, at the time the notes were transferred, there was no existing set-off or equity against the notes, but only the possibility of a future set-off.

4. If, when the notes were indorsed, there was a mortgage to secure them, given to the indorsee by the payee, upon the same land, whether the indorsee was thereby so charged with notice, of the covenants contained in the deed from the payee to the maker and the prior incumbrance, as that these facts can be used to defeat his recovery on the notes? *Quære.*

SPECIAL TERM.—An action upon two promissory notes, made by the defendant, Hobbs, on April 1, A. D. 1853, payable to the order of L. M. Piner, in one and two years after date respectively, and by him indorsed to the plaintiff, Stites. The defense was, that the notes were given in part payment for certain land sold by Piner to Hobbs; that at the time of the sale Piner stated that the land was free from incumbrances, and, by false and fraudulent representations to that effect, induced the defendant to purchase; that he

conveyed by deed containing covenants of general warranty and freedom from incumbrances; that at the time there was a prior uncanceled mortgage upon the premises, made by Piner to Pendleton and Strader, under date of January 22, A. D. 1851, in the sum of $310, which was given to secure purchase money, and which was a lien at the time of the sale, and that of these facts the plaintiff had notice when he took the notes. The reply alleges that the notes were purchased from Piner for value before their maturity and without notice.

*W. Penn Nixon* and *Robert A. Johnston*, for plaintiff.

*Dodd* and *Huston*, for defendants.

HOADLY, J. The facts appear to be, that Piner owning a lot of land in the town of Pendleton, incumbered by a mortgage to Strader and Pendleton, procured Hobbs to purchase it, without an examination of title, upon the representation that the title was good and free from incumbrances, and conveyed it to him by a deed of general warranty, containing also a covenant against incumbrances, taking, in part payment, the notes in question. Before maturity Piner sold the notes to Stites for a money consideration, and Stites took them, as I think is clear from the testimony, without any actual notice, or even reason or cause to expect that there were any equities which could have been set up to defeat a recovery upon them. Indeed, at that time, Mr. Hobbs himself was not aware of any reason for refusing payment. But it appears that, to induce Stites to purchase the notes, Piner offered to secure them by a mortgage of real estate, and accordingly executed and delivered, with his indorsement of the notes, a mortgage of the very property which he had previously conveyed to Hobbs. Stites took the mortgage and placed it upon record, but made no examination of the title.

It is claimed that Stites, by virtue of his acceptance of the mortgage, was thereby charged with constructive notice

of the execution of the deed from Piner to Hobbs, and the covenants therein, and of the existence of the elder mortgage to Strader and Pendleton, and can not, therefore, be considered in the light of a purchaser without notice.

Had the covenants been then broken by an eviction, with notice of which a search of the records would have acquainted Stites, the question would be one of much interest. How far, indeed, the use of the words "notice," "constructive notice," is fairly applicable to junior mortgages in Ohio may be doubted. This language, originally applied where notice of an elder equity subjected the junior incumbrance to its lien, seems to fail when the record of the mortgage is made to decide the question of right definitively, and a subsequent mortgage is unaffected even by actual notice.

But in this case I am relieved from any consideration of this question, by the fact that at the time of sale of the notes by Piner, there had been no breach of the covenants in the deed from Piner to Hobbs.

The covenant, of freedom from incumbrances, in Ohio, is a real covenant running with the land, not broken until eviction.

In this case, the proof shows that the suit for foreclosure, instituted by Strader and Pendleton, was commenced after the sale of the notes. At the time of the sale, therefore, the record showed no present claim, but only the possibility of a future action upon the covenant, or set-off against the notes, by Hobbs against Piner. An indorsee in Ohio takes a note subject to any existing set-off of which he has notice. Even, therefore, if Stites had been informed, in fact, of the existence of the covenant, and of the prior incumbrance, there would be no defense. For "*non constat*" he might have said "that there ever will be an eviction."

Nor is it necessary to consider whether the fraud charged upon Piner is of such a nature as to authorize a defense irrespective of the warranty. For there is no pretense of actual notice of the fraud, and the constructive notice claimed does not embrace the deceit said to have been practiced. An

examination of the records would have disclosed to Stites the fact that Piner had conveyed the property and covenanted against incumbrances, it would not have warranted the conclusion that a fraud was practiced. For he would have been justified in supposing that Hobbs also had examined the title, and had taken it with knowledge, and relying upon the covenants for security.

Judgment for the plaintiff.